UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FORD MOTOR CREDIT COMPANY
and FORD CREDIT TITLING TRUST,

                      Plaintiffs,              **MEMORANDUM & ORDER**

      -against-                             05 Civ. 4807 (DRH) (AKT)

JOHN J. MEEHAN and MATTHEW J.
MEEHAN,

                      Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Attorney for Plaintiffs
3 Gannett Drive
White Plains, New York 10604
By: David L. Tillem, Esq.
    Kathleen A. Daly, Esq.

**LEWIS JOHS AVALLONE AVILES, LLP**
Attorney for Defendants
425 Broad Hollow Road, Suite 400
Melville, N.Y. 11747-4712
By: Brian Brown, Esq.


**HURLEY, Senior District Judge:**

## INTRODUCTION

       Five people were injured while passengers in a vehicle leased by defendant John J. Meehan ("Meehan") and driven by his son, defendant Matthew J. Meehan (collectively, "Defendants"). The vehicle was leased from Plaintiffs Ford Motor Credit Company and Ford Credit Titling Trust (collectively, "Plaintiffs" or "Ford"). After the passengers sued both Ford and Defendants in state court, and after Ford settled all claims with the passengers, Ford filed the present action seeking indemnification from Defendants based, inter alia, on an indemnity

provision in the lease agreement. Ford now moves for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.1 on its contractual indemnification claim against defendant John Meehan only. For the reasons that follow, Ford's motion is granted in part and denied in part.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted.

On or about December 23, 1999, Meehan entered into a lease agreement (the "Lease") with Hempstead L/M Motors Corp. d/b/a Garden City Saab (the "Lessor") to lease a 2000 Lincoln Navigator (the "Vehicle") for the term of 36 months. The Lease was assigned by the Lessor to Ford Credit Titling Trust. The Lease provides that upon assignment to Ford Credit Titling Trust, Ford Motor Credit Company was granted the "power to act on [Ford Credit Titling Trust's] behalf to administer, enforce and defend" the Lease. (Aff. of Mary J. Reno-Brevoort, dated June 22, 2007, ("Reno-Brevoort Aff.") Ex. GG ¶ 29.)

Under the terms of the Lease, Meehan agreed to maintain liability insurance covering the Vehicle and protecting Plaintiffs as additional insureds. (*Id.* ¶ 21.) Meehan maintained such insurance with Allstate in the combined sum of $1,300,000.00. The Lease further provided in the section captioned "INDEMNITY" that Meehan "will indemnify and hold harmless [Plaintiffs] and their assigns from any loss or damage to the Vehicle and its contents and from all claims, losses, injuries, expenses and costs related to the use, maintenance, or condition of the Vehicle." (*Id.* ¶ 33.)

On November 23, 2000, Matthew Meehan was driving the Vehicle when the Vehicle flipped onto its side and struck a tree. There were six passengers in the Vehicle at the time of the accident: (1) Justin Bakst ("Bakst"); (2) Patrick McCloskey ("McCloskey"); (3) Lawrence Zaccherio; (4) Frank Zaccherio; (5) Michael Maher; and (6) Danny Maher. As a result of the accident, McCloskey, then an eighteen year old freshman at Loyola College on a full athletic scholarship, sustained serious trauma to his right leg. On November 28, 2000, McCloskey underwent an above-the-knee amputation of that leg. Bakst, who was eighteen years old at the time, was killed. Three of the other passengers sustained various levels of injuries.

Thereafter, five of the passengers brought four separate actions against Ford and Defendants in state court. Ford Credit Titling Trust's alleged liability was premised upon its status as statutory owner of the Vehicle under section 388 of New York Vehicle and Traffic Law.[1] By Order entered on December 20, 2002, the New York Supreme Court, Nassau County, consolidated each of the passenger cases under one action. On the eve of trial, the suit settled. The settlement called for payments to the passengers totaling $5,825,000.00 (the "Settlement Agreement"), which amount was to be paid as follows:

| | |
|---|---|
| McCloskey | $ 5,075,000.00 |
| Michael Maher | $ 350,000.00 |
| Frank Zaccherio | $ 100,000.00 |
| Lawrence Zaccherio | $ 25,000.00 |
| Estate of Bakst | $ 275,000.00 |

---

[1] At the time the state lawsuits were commenced, section 388 imposed vicarious liability upon the owner of a vehicle involved in an accident. Application of section 388 to lessors, such as Ford, has since been preempted by federal law. *See* 49 U.S.C. § 30106; *see also Merchants Ins. Group v. Mitsubishi Motor Credit Ass'n*, 525 F. Supp. 2d 309, 312 (E.D.N.Y. 2007).

Meehan's insurer, Allstate, tendered the full limits of Meehan's policy ($1,300,000.00) in partial satisfaction of the settlement amount. The Allstate funds were used to satisfy in full the claims of all of the passenger plaintiffs except McCloskey, who was paid $550,000.00 out of the Allstate funds. Ford Credit Titling Trust paid the remainder ($4,525,000) to McCloskey.

In a release executed by McCloskey on January 7, 2005, McCloskey released both Ford and Defendants from any further claims related to the car accident. The release provides that it does not "extinguish, release, impair, alter or modify" the claims of Ford against the Meehans. (Declaration of David L. Tillem, dated Apr. 30, 2007 ("Tillem Decl."), Ex. BB.)

On October 12, 2005, Ford filed the instant action, seeking contractual and implied indemnification from Defendants. Ford seeks the $4,525,000.00 paid to McCloskey, less the sum of $25,000, representing the mandatory minimum primary insurance Ford must credit to Defendants under section 370(a) of New York Vehicle and Traffic Law. By instant motion, Ford now seeks summary judgment on its contractual indemnity claim against defendant John J. Meehan only. In opposition, Meehan claims that he never agreed to the settlement and that Ford settled the action unilaterally. He also notes that Defendants never agreed to, nor signed, the release executed by McCloskey. For the reasons set forth below, Ford's motion is granted in part and denied in part.

## DISCUSSION

### I. *Applicable Law and Legal Standards*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other

documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective

parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.  *The Contractual Indemnity Clause is Valid and Enforceable*

There is no dispute that Meehan executed the Lease and that the Lease provides that Meehan "will indemnify and hold [Ford] harmless . . . from all claims, losses, injuries, expenses and costs related to the use . . . of the Vehicle." (Reno-Brevoort Aff. Ex. GG ¶ 33.) Moreover, it is well-settled that indemnity clauses of this nature are generally valid and enforceable. *See Morris v. Snappy Car Rental*, 84 N.Y.2d 21, 27-30 (1994) (stating that to find otherwise would "abrogate the right of indemnification" and "disparag[e] the important countervailing right of freedom of contract"). Meehan claims, however, that the Lease is invalid pursuant to N.Y. C.P.L.R. § 4544, which renders an agreement involving a consumer transaction inadmissible if the print is not the requisite font size, viz. eight point print. Meehan also argues that the indemnity provision is unenforceable because it "was contained on the reverse side of the [L]ease and was not signed or acknowledged by [him]." (Defs.' Mem. at 6.) In this regard, Meehan claims that he did not see the reverse side of the Lease and that no one ever explained the indemnity provision to him. (Meehan Aff., dated June 5, 2007, ¶ 5.)

6

In response, Plaintiffs assert that the font size of the indemnification provision does in fact satisfy N.Y. C.P.L.R. § 4544. They also argue that because the indemnification clause was contained in a single document incorporating all of the terms of the Lease, the fact that the indemnification provision was on the back of the Lease is of no moment, particularly where the front of the Lease directed the lessee to review the back of the agreement. In this regard, they rely on New York Personal Property Law § 337, which provides that a retail lease agreement shall contain in a single document all the agreements of the parties.

Upon review of the relevant case law, as explained *infra*, it becomes apparent that Meehan's argument is one of unconscionability, which is a question of law for the Court. *See King v. Fox*, 418 F.3d 121, 130 n.5 (2d Cir. 2005). In *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1 (1988), the Court of Appeals outlined the doctrine of unconscionability in contract formation as follows:

> An unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms. The doctrine, which is rooted in equitable principles, is a flexible one and the concept of unconscionability is intended to be sensitive to the realities and nuances of the bargaining process. A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made-i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.
>
> The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice. The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power.

7

> . . . .
>
>> [The substantive element of unconscionability] entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.

*Id.* at 10-11 (internal citations and quotation marks omitted); *see also Universal Leasing Servs., Inc. v. Flushing Hae Kwan*, 565 N.Y.S.2d 199, 200 (2d Dep't 1991) (noting that "procedural unconscionability concerns the contract formation process, while substantive unconscionability looks to the content of the contract"). "[I]n general, it can be said that procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983).

Here, Meehan's arguments concerning the alleged unenforceability of the Lease pertain to procedural unconscionability.[2] The Court will address Meehan's arguments in turn.

### A. *The Print of the Indemnity Clause is the Requisite Font Size*

In support of Meehan's assertion that the font size of the indemnification provision is too small to satisfy N.Y. C.P.L.R. § 4544, Meehan attached a copy of the Lease which is below eight point print. This copy mirrors that of the one submitted by Ford along with its moving papers.

In its reply papers, Ford submits the affidavit of Mary J. Reno-Brevoort, a legal administrative assistant employed by Ford. Ms. Reno-Brevoort states that the copy of the Lease Ford submitted in support of its motion for summary judgment "neither was, nor is, representative

---

[2] Meehan does not argue that the indemnification provision is substantively unconscionable, presumably because as noted above, such clauses have been found to be generally enforceable. *See Morris*, 84 N.Y.2d at 27-30.

8

of the actual size of the Lease as signed by Meehan." (Aff. of Mary J. Reno-Brevoort, dated June 22, 2007, ¶ 2.) Instead, it "was reduced in size merely for purposes of Ford['s] motion." (*Id.*) She attaches a "full-length copy of the Lease" which satisfies the font requirement of section 4544 and indicates that Ford will produce the original for inspection by the Court if requested to do so. The issue becomes, then, is it appropriate for the Court to consider such evidence given that it was raised for the first time in Ford's reply papers. In the exercise of discretion, the Court finds that it is.

The new copy of the Lease directly responds to an issue raised in Meehan's opposition papers. Meehan has not questioned the authenticity of the copy or indicated that he wished to submit additional evidence to refute the validity thereof. In this regard, he could have moved for leave to file a sur-reply but chose not to. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) ("[I]t is hard for [plaintiff] to claim unfair prejudice now, because she could have claimed surprise in the district court and sought to file a responsive sur-reply."); *Bayway Refining Co. v. Oxygenated Mktg. and Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) (district court properly relied on evidence submitted with moving party's reply, where, inter alia, record showed that opposing party knew such evidence could refute its claim but "chose not to introduce any evidence" of its own). Under these circumstances, the Court will consider the copy of the Lease submitted with Ford's reply papers in ruling on Ford's motion. Having done so, the Court finds that Meehan has failed to raise an issue of fact sufficient to deny summary judgment on the basis of the type size of the Lease.

### B. *Meehan has Failed to Proffer Evidence that the Indemnity Clause is Procedurally Unconscionable*

In *Morris*, the New York Court of Appeals was called upon to decide "whether and to what extent plaintiff is bound by an indemnification provision contained in the rental agreement requiring her to indemnify defendant for liability arising out of the use of the vehicle which exceeds the insurance coverage defendant is required to maintain under State law." 84 N.Y.2d at 25. The lessee signed her name on the front of the lease immediately beneath the "following prominently displayed language: 'I HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS ON *BOTH SIDES* OF THIS RENTAL AGREEMENT.'" *Id.* at 30 (emphasis in original). The indemnification clause was on the reverse side of the lease. *See Morris v. Snappy Car Rental, Inc.*, 595 N.Y.S.2d 577, 579 (4th Dep't 1993), *aff'd*, 84 N.Y.2d 21 (1994). In rejecting the lessee's claim that the indemnification agreement was unenforceable because it was the result of procedural unconscionability, the Court of Appeals found:

> Nothing in the record indicates that plaintiff, a high school graduate who attended college, was prevented from reading the agreement or asking that its contents be explained to her by one of [the lessor's] representatives. She has made no allegation that she was the victim of deceptive or high pressure tactics. (*See, Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 11, 537 N.Y.S.2d 787, 534 N.E.2d 824). The contract provisions at issue were set forth in a clear and legible manner and were printed in the size required by CPLR 4544. Plaintiff has proffered no basis as would excuse her from being bound by the terms of the rental agreement. Although plaintiff would use to her advantage the fact that she did not read the terms of the rental agreement and was unaware of its indemnification language, this is simply no bar to enforcement of the rental agreement. Freedom of contract permits plaintiff, as lessee, to agree to limit her statutory protection of recourse against the owner under section 388 [of New York Vehicle and Traffic Law].

84 N.Y.2d at 30.

Here, as in *Morris*, Meehan has offered no proof of high pressure or deceptive tactics, or that he was prevented from reading the Lease in its entirety. Instead, he merely claims that he was not shown the reverse side of the Lease and that no one ever explained the indemnity provision to him. Even if all of Meehan's assertions are true, they do not show procedural unconscionability. If Meehan did not understand the Lease or had questions about it, the burden was on him to raise his concerns before signing it. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them[.] Thus, even if Gold did not understand the form or had questions about the arbitration clause or the rules, as he alleges, the burden was upon him to have his concerns addressed before signing [the agreement].") (internal citations and quotation marks omitted); *Moss v. Rent-A-Center, Inc.*, No. 06 CV 3312, 2007 WL 2362207, at *5 (E.D.N.Y. Aug. 15, 2007) (finding that burden on signatory to read agreement); *Morris*, 84 N.Y.2d at 30 (noting that failure to read agreement no bar to enforcement). Meehan has not argued that he lacked experience or education and thus could not understand the terms of the Lease. Nor has he argued that he ever requested that anyone review the terms of the Lease with him.

At the end of the day, all the Court is left with is Meehan's argument that he was not provided with sufficient notice to review the reverse side of the Lease, which contained the indemnity clause. The record establishes that Meehan signed his name on the front side of the Lease, directly above the lessor's signature. Immediately below the lessor's signature, in capital letters, is the following statement: "NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION." The front of the Lease, above the signatures, contains paragraphs 1 through 17.

The reverse side contains paragraphs 18 through 35. The indemnity provision is found in paragraph 33. Under these circumstances, the Court finds that the terms on the reverse side of the Lease were sufficiently called to the attention of Meehan and that he was bound by them. *See Blair v. Albany County*, 512 N.Y.S.2d 552, 553 (3d Dep't 1987) (finding that lessee "expressly agreed to the indemnity condition on the reverse side" where "[i]mmediately preceding [lessee's signature] [wa]s a sentence stating that '[t]he above equipment has been counted and received in good condition and rented in accordance with terms and conditions * * * on reverse side.'"); *Am. Utex Int'l, Inc. v. ICC Corp.*, 425 N.Y.S.2d 579, 580 (1st Dep't 1980) (finding that buyer had sufficient notice of arbitration provision located on back of sales note where buyer signed note immediately above the words "Subject to the general terms and conditions set forth on the back hereof"); *Zwiebel v. Guttman*, 791 N.Y.S.2d 874 (Table), No. 45021/02, 2004 WL 1725754, at *7 (Sup. Ct. Kings County Apr. 15, 2004) ("Zwiebel's acknowledgment herein that two sides to the lease agreement exist, binds him regardless whether he actually read those terms.") (citing *Morris*);[3] *cf. Gambardella v. G. Fox & Co.*, 716 F.2d 104, 111-12 (2d Cir. 1983) (discussing regulations under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., which require creditor to disclose whether it has placed certain relevant information on reverse side of its periodic statements by using specified notices, including the following language: 'NOTICE: See reverse side for important information.'") (quoting 12 C.F.R. § 226.7(c)(4)); *but cf. Kenner v. Avis Rent A Car Sys., Inc.*, 678 N.Y.S.2d 213, 214 (4th Dep't 1998) (finding that evidence raised a triable issue of fact as to whether lessee had sufficient notice of

---

[3] In *Zwiebel*, the indemnity provision appeared on the reverse side of the lease, 2004 WL 1725754, at *2, although it cannot be discerned from the decision what language the lease used on the front page to direct the lessee to the other side.

indemnification provision where provision was contained in a separate jacket or folder that was not provided to lessee until after he signed the rental agreement).

In sum, Meehan has failed to establish that he lacked a "meaningful choice" when he signed the Lease. *Gillman*, 73 N.Y.2d at 10. Accordingly, the Court finds that the indemnity provision is not unconscionable.

### III. *Meehan is not Bound By Ford's Settlement of the Underlying Passenger Actions*

In opposition to Ford's motion, Meehan makes two arguments why he should not be bound to Ford's settlement of the underlying passenger actions: (1) he did not consent to the settlement; and (2) a hearing is required to determine the reasonableness of the settlement and attorneys' fees and expenses. The Court addresses Meehan's arguments below.

#### A. *There is an Issue of Fact as to Whether Meehan Consented to the Settlement*

Meehan contends that Ford never consulted with him "as to whether [he] agreed to the settlement or whether the matter should be tried to a conclusion, which may have resulted in a verdict lower that Ford's voluntary settlement." (Defs.' Mem. at 9.) Had he been consulted, Meehan claims "he would have objected to the amount of the settlement to the extent it exceeded $1,300,000.00, the limits of the insurance policies." (*Id.* at 12.) Meehan cites no authority in support of his contentions.

"Absent a specific provision in the contract of indemnity, an indemnitee [here, Ford] is not required to give the indemnitor [here, Meehan] notice of the claims against him." *L.B. Kaye Assocs., Ltd. v. Libov*, 527 N.Y.S.2d 216, 217 (1st Dep't 1988) (citing, inter alia, *Conner v. Reeves*, 103 N.Y. 527, 529-30 (1886)); *see also Baker v. Northeastern Indus. Park, Inc.*, 423 N.Y.S.2d 308, (3d Dep't 1979) (same). "If such notice is given, however, the indemnitor may then elect to defend

the action." *Feuer, v. Menkes Feuer, Inc.*, 187 N.Y.S.2d 116, 121 (1st Dep't 1959). If the indemnitor declines to defend the proceeding, the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make. *Id.*; *see also Fidelity Nat'l Title Ins. Co. v. First N.Y. Title & Abstract Ltd.*, 707 N.Y.S.2d 112, 113 (2d Dep't 2000) (citations omitted); *see also Waltz v. MRC Mgmt., LLC*, 378 F. Supp. 2d 440, 442 (S.D.N.Y. 2005) (same). "If, on the other hand, the indemnitee fails to notify the indemnitor, or having notified him, refuses to accept proffered assistance, he proceeds at his own risk with regard to any judgment or settlement which may ultimately ensue." *Feuer*, 187 N.Y.S.2d at 12. Then, in order to recover reimbursement, the indemnitee must establish that the amount of the settlement was reasonable, that he would have been actually liable, and that there was no good defense. *See Casey v. Ryder Truck Rental, Inc.*, No. 00 CV 2856, 2005 WL 1150228, at *8 (E.D.N.Y. May 16, 2005) (citations omitted); *Alberto v. Nassau Sling Co.*, 782 N.Y.S.2d 677, 678 (2d Dep't 2004); *Nat'l Union Fire Ins. Co. v. Red Apple Group, Inc.*, 767 N.Y.S.2d 68, 69 (1st Dep't 2003); *Feuer,* 187 N.Y.S.2d at 122.

Here, the indemnification clause contained no provision requiring Ford to notify Meehan of any claims asserted against it. However, because both Ford and Meehan were sued in the underlying passenger actions, Meehan was put on notice of the claims against Ford.[4] Nonetheless, Meehan claims that he was deprived of an opportunity to defend those suits because Ford unilaterally settled them without consulting him. (Meehan Aff. ¶¶ 8-9.) Ford disagrees, claiming that Meehan's counsel was copied on a January 4, 2005 letter to Allstate which acknowledged that a global settlement was reached in the amount of $5.8 million and that the

---

[4] Meehan appeared in the passenger actions represented by the same counsel that represents him here.

passenger plaintiffs had accepted Allstate's tender of $1.3 million as part of the settlement. (*See* Tillem Decl. Ex. Z; *see also id.* Ex. AA.)

The Court finds that there is a question of fact as to whether Meehan was deprived of an opportunity to defend himself in the passenger actions and participate in the settlement as the January 4th letter appears to be confirming a settlement that had already been reached. As noted above, under New York law, if Meehan had notice of the settlement, he is bound by any reasonable good faith settlement. If he did not have notice, he is only bound if the settlement was reasonable and Ford would have been actually liable. *See Casey*, 2005 WL 1150228, at *8. Under the present record, given that Ford's good faith and statutory liability are not in dispute,[5] the result is the same either way. Which is to say that under either analysis, the only remaining question is the reasonableness of the settlement.

### B. *A Hearing is Required to Determine Reasonableness*

Meehan argues that if the Court finds that the indemnification provision is enforceable, there must be a hearing to determine the reasonableness of the settlement.[6] The Court agrees.

Because there is an issue of fact as to whether Meehan was given sufficient notice and opportunity to participate in the settlement, and because there was no jury verdict establishing the damages that Ford was legally liable for, Meehan is entitled to a hearing as to the reasonableness

---

[5] There is no evidence in the record as to any bad faith on Ford's behalf, nor does Meehan even address the issue. In addition, Meehan concedes Ford's actual liability under section 388 of New York's Vehicle & Traffic Law. (*See* Ford's Local Rule 56.1 Stmt. ¶ 43; Defs'. Local Civil Rule 56.1 Stmt. ¶ 43.)

[6] Meehan also claims that a hearing is required to determine the reasonableness of the attorneys' fees and associated expenses sought by Ford. Ford consents to a hearing on this limited issue. (Ford's Reply at 8 n.2.)

15

of the amounts paid in the settlement. *See Atl. Cement Co. v. Fidelity & Casualty Co.*, 63 N.Y.2d 798, 802 (1984) (affirming the remission of case for trial as to reasonableness of the amount of settlement prior to any award of indemnification); *Lubermens Mut. Ins. Co. of the Kemper Group of Ins. Cos. v. Lumber Mut. Ins. Co.*, 538 N.Y.S.2d 542, 544 (1st Dep't 1989) ("Inasmuch as appellant did not participate in the defense of the third-party action or in the settlement, and as there was no jury verdict establishing the amount of damage[s] . . . , appellant is also entitled to contest the reasonableness of the amount paid pursuant to the settlement agreement."); *State Farm Mut. Auto. Ins. Co. v. Grund*, 662 N.Y.S.2d 845, 847 (2d Dep't 1997) (finding that lessee's insurance company was entitled to a hearing as to the reasonableness of the amounts lessor paid to settle underlying passenger action prior to any indemnification). The cases cited by Ford for the proposition that a hearing is not required all involve scenarios where the indemnitor was provided with sufficient notice. *See Fidelity*, 707 N.Y.S.2d at 113-14 (finding "ample evidence in the record that the [indemnitor] received . . . notice"); *Coleman v. J.R.'s Tavern, Inc.*, 622 N.Y.S.2d 334, 335-36 (2d Dep't 1995) (implicitly finding that indemnitor had notice of the claim). Because the Court has found a question of fact as to this issue, the Court finds that Meehan is entitled to a hearing on reasonableness.

## *CONCLUSION*

For all of the above reasons, Ford's motion for summary judgment is granted in part and denied in part. The Court finds that the indemnification clause is valid but finds that Meehan is entitled to a hearing on the reasonableness of the settlement as well as attorneys' fees and associated costs. This matter is respectfully referred to Magistrate Judge A. Kathleen Tomlinson

16

for that purpose. Ford is directed to inform this Court, via letter on or before April 14, 2008, whether it intends to proceed with its second cause of action against defendant Matthew Meehan.

**SO ORDERED.**

Dated: Central Islip, New York
   March 31, 2008                /s/
                       Denis R. Hurley
                       Unites States District Judge