**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
FORD MOTOR CREDIT COMPANY and
FORD CREDIT TITLING TRUST,

                    Plaintiffs,

       - against -

JOHN J. MEEHAN and MATTHEW J. MEEHAN,

                   Defendants.
-----------------------------------------------------------X

**ORDER**

CV 05-4807 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Senior District Judge Hurley recently issued a Memorandum & Order [DE 37] granting partial summary judgment in this indemnification case which emanates from a motor vehicle accident where a car carrying six young male passengers flipped onto its side and hit a tree. As a result, one young man was killed, one ultimately underwent an above-the-knee amputation of his leg, and three others sustained varying levels of injuries. Having granted partial summary judgment to the Plaintiffs Ford Motor Credit Company and Ford Credit Titling Trust ("Plaintiffs" or "Ford"), Judge Hurley referred the matter to me to conduct a hearing on the reasonableness of the settlement entered into between Ford and the five passengers who brought suit in state court against Ford and Defendants John and Matthew Meehan. Judge Hurley further directed that the hearing include a determination of the reasonableness of the attorneys' fees and associated costs sought by Plaintiffs.

On April 3, 2008, I issued an Order directing the parties (1) to submit briefing, limited to ten (10) pages, setting forth their respective positions on the reasonableness of the settlement and

fees and (2) to advise the Court whether they intended to introduce witnesses at the hearing. Plaintiffs responded by letter [DE 39] that they intended to produce witnesses and were commencing service of trial subpoenas to that end. Among others, Plaintiffs subpoenaed Defendants' counsel, Brian Brown, Esq., who represented Defendants in the state court actions and who is also co-counsel in the instant action. Mr. Brown sent a letter to the Court dated May 6, 2008 [DE 42] objecting to the subpoena which had not yet been served, and advising that Court intervention would likely be necessary. A similar subpoena was to be served on Defendants' personal counsel, John Bailly, Esq., who also objected to any intended subpoena. I scheduled a telephone conference with the parties for May 9, 2008 to discuss this issue.

During the May 9 telephone conference, I advised the parties that Rule 45 calls for formal motion practice if the person subpoenaed seeks to quash or modify the subpoena and that the one-page letters written to the Court were not sufficient. In light of the impending hearing scheduled for May 16, 2008, I informed the parties that if they chose to engage in formal motion practice, the hearing date would have to be adjourned. I directed the parties to confer with each other in the hope of reaching an agreement concerning the scope of the testimony to be provided at the hearing and the specific production of documents so that formal motion practice might not be necessary and the hearing could proceed on May 16. *See* DE 46. I further directed the parties to contact my Chambers by the close of business on May 12 to inform me whether they had reached an agreement or whether they intended to engage in formal motion practice, in which case they would work out a briefing schedule and the hearing would be adjourned to a date in July.

On May 12, Plaintiffs' counsel filed a letter on ECF [DE 47], on behalf of all parties, stating that (1) they had been unable to reach an agreement, (2) they had entered into a formal briefing schedule on the motion to quash or modify, and (3) the hearing would have to be adjourned to the July 17 date which I had previously discussed with the parties. These motions are now before the Court. The law firm of Lewis Johs Avallone Aviles, LLP ("Lewis Johs"), counsel for Defendants John J. Meehan and Matthew J. Meehan ("Meehan"), moves to quash a trial subpoena served upon it by Plaintiffs [DE 52]. In addition, the law firm of Bailly and McMillan, LLP ("Bailly and McMillan) (collectively with Lewis Johs, "the Law Firms"), Meehan's personal counsel, move to quash a nearly identical trial subpoena served upon it by Ford [DE 55]. The Court has reviewed Lewis Johs' moving papers, Bailly and McMillan's moving papers, Ford's opposition to both motions, and Lewis Johs' reply papers. For the reasons set forth more fully below, the Law Firms' motions to quash the trial subpoenas served upon them by Ford are hereby GRANTED in part and DENIED in part.

## II. BACKGROUND

### A. Procedural Status

The facts involved in this case are set forth at some length in Judge Hurley's Memorandum & Order [DE 37] (the "Order") and will not be repeated here except as they apply to the instant motions. On or about December 23, 1999, Meehan entered into an agreement to lease a vehicle for 36 months. That lease was assigned by the original lessor to Ford. Pursuant to the terms of the lease agreement, Meehan maintained liability insurance with Allstate in the sum of $1,300,000 to cover the vehicle. The lease agreement included an indemnity clause that provided that Meehan "will indemnify and hold harmless [Ford] and their assigns from any loss

3

or damage to the Vehicle and its contents and from all claims, losses, injuries, expenses and costs related to the use, maintenance, or condition of the Vehicle."

As a result of the November 23, 2000 accident, five of the passengers (the "Passenger Plaintiffs") brought four separate actions which were ultimately consolidated against Ford and Meehan in state court. On the eve of trial, a settlement agreement was reached which called for payments to be made to the Passenger Plaintiffs in an amount totaling $5,825,000. Meehan's insurer, Allstate, tendered the full limits of Meehan's policy ($1,300,000) in partial satisfaction of the settlement amount, while Ford paid the remaining amount.

Ford filed this action in federal court seeking contractual and implied indemnification from Meehan pursuant to the indemnity provision of the lease agreement. Subsequently, Ford sought summary judgment on its contractual indemnity claim against Defendant John J. Meehan. In opposition, Meehan claimed that he never agreed to the settlement and Ford had settled the action unilaterally.

In the Order granting partial summary judgment, Judge Hurley found that the contractual indemnity clause in the lease agreement was valid and enforceable, and rejected Meehan's claims that the indemnity clause was unconscionable. However, Judge Hurley also determined that an issue of fact exists whether Meehan had notice of the settlement and "whether Meehan was deprived of an opportunity to defend himself in the passenger actions [in state court] and participate in the settlement . . . ." Order at 15. As a result, Judge Hurley stated that:

> [U]nder New York law, if Meehan had notice of the settlement, he is bound by any reasonable good faith settlement. If he did not have notice, he is only bound if the settlement was reasonable and Ford would have been actually liable. Under the present record, given that Ford's good faith and statutory liability are not in dispute, the result

4

>   is the same either way. Which is to say that under either analysis, the
>   only remaining question is the reasonableness of the settlement.

*Id.* (internal citation and footnote omitted). Finding that a hearing was necessary to determine the reasonableness of the settlement amount as well as the attorney's fees and associated expenses sought by Ford, Judge Hurley referred the matter to me for that purpose.

**B.     The Trial Subpoenas**

In preparation for the upcoming hearing, Ford served nearly identical trial subpoenas upon Lewis Johns, Meehan's counsel in the instant action, and Bailey and McMillan, Meehan's personal counsel and counsel in the underlying state court actions. The subpoenas seek production of five categories[1] of documents as well as testimony from the attorneys. As they appear in the attachments to the subpoenas, the categories call for the following documents:

> (3)     All correspondence between you and any attorney representing Ford concerning all attempts to settle the [underlying state court] Passenger Actions, including negotiations and mediation.[2]
>
> (4)     All correspondence between you and any attorney representing any or all of the Passenger Plaintiffs concerning all attempts to settle the Passenger Actions, including negotiations and mediation.
>
> (5)     All billing and time records reflecting any discussions between you and any person acting on behalf of Ford concerning

---

[1]     The Lewis Johs subpoena originally sought production of two additional categories of documents: (1) All documents concerning the Claim and the tender of insurance proceeds pertaining to the Claim, and (2) All correspondence between you and Allstate as it concerns the Action. Ford withdrew its request for production of these documents. Decl. of Kathleen A. Daly in Opp'n to Mots. to Quash ("Daly Decl.") ¶ 11. The Bailly and McMillan subpoena also originally contained a request for "All documents concerning the Claim and the tender of insurance proceeds pertaining to the Claim," which request Ford has also withdrawn. *Id.*

[2]     The Lewis Johs' subpoena also seeks production of such correspondence pertaining to "the subject matter of the [instant Federal] Action, including but not limited to Ford's claim for indemnification."

5

> Settlement of the Passenger Actions;
> Mediation of the Passenger Actions[3]
> the Action, including but not limited to Ford's claim for indemnification.

(6) All billing and time records reflecting any discussions or meetings between you and any person acting on behalf of Ford concerning

> Settlement of the Passenger Actions;
> Mediation of the Passenger Actions
> the Action.

(7) All billing and time records reflecting any discussions or meetings between you and any person acting on behalf of the Passenger Plaintiffs concerning:

> Settlement of the Passenger Actions;
> Mediation of the Passenger Actions.

Both law firms seek to quash the subpoena with respect to each and every category delineated here.

### III. THE PARTIES' CONTENTIONS

The Law Firms make identical arguments in support of their mirror-image motions to quash. They contend initially that the only two issues before this Court are the reasonableness of the settlement amount in the underlying personal injury actions and the reasonableness of Ford's claimed attorney's fees and expenses. Mem. of Law in Supp. of Mot. to Quash or Modify the Subpoena Served by the Pls. on Lewis Johs Avallone Aviles, LLP ("Lewis Johs Mem.") at 1; Mem. of Law in Supp. of the Mot. to Quash or Modify the Subpoena Served by the Pls. on Bailly & McMillan, LLP ("Bailly Mem.") at 1. According to the Law Firms, none of the documents

---

[3] With respect to categories (5) and (6), the Lewis Johs' subpoena also seeks such billing and time records reflecting any discussions with Ford concerning the instant Federal Action, including but not limited to Ford's claim for indemnification.

6

sought by the trial subpoenas has any relevance to these two issues. Lewis Johs Mem. at 2; Bailly Mem. at 2. In particular, with respect to categories (5), (6) and (7) (billing and time records of the Lewis Johs and Bailly law firms), the Law Firms emphasize that such documents are irrelevant to this action because it is the reasonableness of *Ford's* attorney's fees, not Meehan's attorney's fees, which is now at issue before this Court. Lewis Johs Mem. at 7; Bailly Mem. at 8.

In addition to objections based on relevance, the Law Firms contend that the trial subpoenas are overly broad and unduly burdensome. With respect to category (3) (documents reflecting communications between Lewis Johs/Bailly and Ford regarding attempts to settle the underlying state court actions and the instant action), such correspondence "would certainly be in the possession of Wilson Elser who represented Ford in the underlying action, and who represents Ford herein." The Law Firms argue that it would be much less burdensome and expensive to have Ford's counsel simply check their own files for such documentation. Lewis Johs Mem. at 6-7; Bailly Mem. at 7.

With respect to category (4) (correspondence between Lewis Johs/Bailly and the Passenger Plaintiffs regarding attempts to settle the underlying state court actions), the Law Firms contend that the request in "unreasonable" in that, in addition to seeking irrelevant documents, it is "yet another blatant attempt to use the subpoena issued under Fed. R. Civ. P. 45 for discovery and production of documents under Rules 26 and 34," and that "counsel has waived any and all discovery for these items." Lewis Johs Mem. at 7; Bailly Mem. at 7-8.

Ford argues in opposition that "[t]he issues that will be the subject of the hearing include not only the reasonableness of the settlement but also the issue of notice – or lack thereof which

7

Mr. Meehan claimed for the first time after the deadline for discovery had passed and only in opposition to the motion for summary judgment." Mem. Of Law in Opp'n to Mots. To Quash Trial Subpoenas by Non-Parties Lewis Johs Avallone Aviles, LLP & John Bailly, Esq. ("Ford Opp'n") at 3. Ford contends that trial testimony from attorneys at the Law Firms "may be necessary to buttress Ford['s] case that Mr. Meehan – through his counsel – knew about the settlement and negotiations leading up to settlement . . . ." *Id.* at 5. Ford further maintains that the subpoenaed documents "are not necessary for the prosecution of Ford['s] claim but may become necessary should Meehan call either Mr. Bailly and/or Mr. Brown in support of his defense [that Meehan had no notice of the settlement] or attack Ford['s] position that settlement of these claims was discussed." *Id.* at 7. Finally, Ford argues that the Law Firms have failed to factually support their argument that production of the subpoenaed documents would be unduly burdensome. *Id.* at 3.

## IV.　LEGAL STANDARD

A subpoena issued to non-parties pursuant to Rule 45 is "subject to Rule 26(b)(1)'s overriding relevance requirement." *During v. City Univ. of N.Y.*, No. 05 Civ. 6992, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable").

8

A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). "The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) (quoting *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003)).

## V. DISCUSSION

### A. As to the Scope of the Hearing

Judge Hurley's determination of the scope of the hearing to be held before me is spelled out in his Order, although the parties interpret the Order differently. After thoroughly reviewing the Order, I find Judge Hurley's language and intent clear. Ford correctly points out that Judge Hurley found an issue of fact to exist as to whether Meehan had notice of the settlement. Order at 15. However, that was not the end of the analysis. After describing the two possible scenarios here (*i.e.*, if Meehan had notice, he is bound by any reasonable good faith settlement OR if Meehan did not have notice, he is only bound if the settlement was reasonable and Ford would actually have been liable), Judge Hurley went on to note that the existing record showed there was no dispute concerning Ford's good faith and statutory liability. *Id*. In light of those facts, Judge Hurley found that the ultimate result is the same, regardless of which scenario bears out. Consequently, the only open question is the reasonableness of the settlement. The Court found Meehan is entitled "to a hearing as to the reasonableness of the amounts paid in the settlement." *Id.* at 16. Therefore, there is no need to address whether Meehan had notice in the upcoming hearing. The scope of the hearing remains restricted to the issue of the reasonableness of the settlement.

9

## B. As to the Scope of the Subpoenas

Since the question whether Defendant Meehan had notice of the settlement is ***not*** the subject of the hearing – and Ford has proffered no argument that such testimony would bear any relevance to the reasonableness of the settlement amount – the scope of the subpoenas must of necessity be restricted to this issue as well.

Categories 1 and 2 of documents requested in Ford's subpoenas have been withdrawn. As to Category 3, I am GRANTING the Law Firms' motions to quash. Correspondence between the Law Firms and any attorney representing Ford are presumptively in Ford's possession. Therefore, Category 3 is unnecessary and thereby unduly burdensome.

Category 4 calls for "[A]ll correspondence between you and any attorney representing any or all of the Passenger Plaintiffs concerning all attempts to settle the Passenger Actions, including negotiations and mediation." I find that this category is relevant to the issue of the reasonableness of the settlements in the underlying actions. Typically, such evidence is inadmissible under Federal Rule of Evidence 408, which provides that

> evidence of offering . . . a valuable consideration in compromising or attempting to compromise a claim" and evidence of "conduct or statements made in compromise negotiations regarding the claim" are inadmissible "when offered to prove . . . amount of a claim that was disputed as to . . . amount.

However, FRE 408 is not absolute:

> The final sentence of Rule 408 emphasizes that the Rule excludes evidence of compromise negotiations only where such evidence is offered to establish liability for, or invalidity of a claim or its amount. The principle of exclusion does not operate when compromise-related evidence is used to establish some other fact of consequence in the litigation.

4 WEISSENBERGER'S FEDERAL EVIDENCE § 408.4, at 150-151.

Here, liability is not in issue. Nor are Defendants contending that the dollar amount of the settlement is not the actual amount of the settlements entered into in the underlying actions. Rather, Defendants are challenging the amounts as being unreasonable.

The Court will be required to review and weigh a number of factors in reaching a determination regarding the reasonableness of the settlement at issue here. "There is no bright-line test for concluding that a particular settlement is fair." *Thomas v. City of New York*, 92 CV-1316, 1995 WL 519991, at *2 (E.D.N.Y. Aug. 4, 1995). However, "a strong presumption exists that a settlement is fair and reasonable" where:

> (i) the settlement is not collusive but was reached after arm's length negotiations; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there ha been sufficient discovery to enable counsel to act intelligently.

Id. at * 2 (quoting *Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988)). In light of these concerns, any documents dealing with the settlement negotiations or settlement terms are relevant here and will not be excluded. Therefore, as the subpoena category relates to these documents, the motion to quash is DENIED. Any responsive documents are to be turned over to Plaintiffs' counsel by the close of business on July 15, 2008. To the extent that the Defendants assert attorney-client or work product privilege with regard to any of these documents, they are to fax a privilege log to my Chambers, with a copy to Plaintiffs' counsel, by noon on July 16 and to bring a copy of the documents to the hearing on July 17.

In light of the fact that notice is not an issue for the upcoming hearing, the Law Firms' motions to quash with regard to Categories 5, 6 and 7, which the Court finds to be irrelevant, are GRANTED.

C.  **As to the Assertion of Attorney-Client Privilege**

Ford's counsel has also subpoenaed counsel to testify at the upcoming hearing. Generally, within the Second Circuit "depositions of opposing counsel are disfavored," although they "are not categorically prohibited." *Sea Tow International, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) (quoting *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)). A court faced with a request to depose an opposing party's attorney must balance "the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001).

In dealing with this issue, and as noted recently by Magistrate Judge Boyle in *Sea Tow International, Inc.,* 246 F.R.D. at 424, district courts in New York have generally been guided by certain *dicta* in *In re Friedman*, 350 F.3d 65 (2d Cir. 2003). In *Friedman*, the Second Circuit rejected the Eighth Circuit's position as enunciated in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). There, the court held that litigants seeking to depose "opposing trial counsel" had to establish that "(1) no other means exist to obtain the information than to depose opposing counsel. . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 350 F.3d at 71. In *Friedman*, the Second Circuit characterized the *Shelton* rule as "rigid," and noted that

12

> We have never adopted the *Shelton* rule and have stated specifically that the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of controversies of this nature.

*Id*. at 67. Contrary to the *Shelton* rule, the Second Circuit found that

> [t]he standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. ... Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought an in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*Id.* at 72.

It should be noted here that Defendant Meehan raised as a defense in his summary judgment papers that he never agreed to the settlement and that Ford settled the action unilaterally. Specifically, as Judge Hurley noted, Defendant Meehan contends that Ford never consulted with him "as to whether [he] agreed to the settlement or whether the matter should be tried to a conclusion, which may have resulted in a verdict lower than Ford's voluntary settlement." Defs. Mem. In Support of its Motion for Summary Judgment at 9; Order at 13. Defendant Meehan claimed that had he been consulted, "he would have objected to the amount of the settlement to the extent it exceeded $1,300,000.00, the limits of the insurance policies." Defs. Mem. at 12; Order at 13. Ford argues that the trial testimony of attorneys at the Law Firms is necessary "to buttress Ford['s] case that Mr. Meehan – through his counsel – knew about the settlement and negotiations." Ford Opp'n at 5. Clearly, Defendant Meehan contests the amount of the settlement and has put the reasonableness of the settlement squarely at issue here. Having

13

done so, he cannot use the attorney-client privilege as both a sword and a shield. Moreover, Ford's argument brings that prospective attorney testimony into the sphere of relevant information with regard to the upcoming hearing, particularly as it relates to the factors set forth in *Ross v. A.H. Robins Co.* cited above in Section IV(B).

The Lewis Johs firm was retained by Allstate Insurance Company, the Meehans' automobile liability insurance company, to represent the Meehans in the defense of the underlying personal injury actions, as well as the instant action. See Affidavit of Brian Brown, Esq., ¶ 10. The Lewis Johs firm represented the Meehans "throughout the entire underlying litigation; and thereafter, when the within lawsuit was commenced, [they] continued to represent the defendants." Id., ¶ 11. In order to carry their burden with regard to the issue of reasonableness of the settlements in the underlying action, Plaintiffs would have the right to explore, if they choose to do so at the hearing, what knowledge of and/or role in, if any, Lewis Johs had in the negotiation of those settlements. Conversely, Lewis Johs also has a right to introduce any relevant evidence to support the Meehans' argument that Ford settled the action unilaterally and that a trial of the underlying actions may have resulted in a verdict lower than Ford's voluntary settlement. However, I also caution the parties that this is a very limited area of inquiry and the Court's ruling here should not be construed as a wholesale waiver of the attorney-client privilege. The same principles apply to prospective testimony by the Bailly and McMillan firm.

For these reasons, the motions to quash the subpoenas by the Law Firms with regard to their prospective hearing testimony is GRANTED in part and DENIED in part. As to the limited

14

area of relevant testimony outlined above, the motion to quash is DENIED.  As to all other areas of inquiry, the motion to quash is GRANTED.

**V.    CONCLUSION**

For all of the foregoing reasons, the motions to quash trial subpoenas filed by Lewis Johs and Bailly and McMillan are GRANTED in part and DENIED in part, as set forth herein.

**SO ORDERED.**

Dated: Central Islip, New York
       July 11, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge